UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOHN E. QUIRK )<br>)<br>    Plaintiff )<br>)<br>    v. )<br>)<br>)<br>)<br>VILLAGE CAR COMPANY, INC. )<br>)<br>    Defendants ) | CIVIL ACTION NO._____ |

## **COMPLAINT**

Plaintiff John E. Quirk ("John") seeks to recover deferred compensation benefits, and other benefits, due him under the "John E. Quirk Plan of Deferred Compensation" ("the Plan). John was the former owner, president, and founder of Village Car Company, Inc., which does business under a number of different trade names, the most visible being Quirk automobile dealerships throughout the State of Maine. Beginning in the summer of 2018, the Plan, by and through its Reviewing Officer, John J. Quirk ("Quirk") unilaterally and with no basis, ceased payment of John's full deferred compensation benefits. The Plan refused to disclose in writing the basis for this denial and withholding of funds. Upon threat of litigation, and after more than 2 months of withholding his full compensation, the Plan reimbursed John for the withheld funds. No written explanation for the denial of benefits was ever received by John or his counsel.

Nonetheless, pursuant to the Plan, John is entitled to quarterly payments of $83,250.00 for a term of 20 quarters. The Plan terminates payment of benefits to

1

John upon John's death, regardless of whether the benefits have been paid to John in full at the time of his passing. In short, John's Estate will not receive any portion of John's deferred compensation following his death regardless of whether any benefits have previously paid *or not.*" (emphasis added). Put another way, should John pass away prior to the payment in full of his benefits, the Plan receives a windfall as its obligation to make payment in full terminates.

John is of advanced age. Likely due to the termination upon death clause of the Plan referenced above, Quirk and/or the Plan have refused to pay to John his payments in a quarterly fashion and are instead remitting payment to John in much smaller, weekly installments. Despite several written requests to adhere to a quarterly payment schedule as mandated by the Plan, Quirk and/or the Plan have refused to comply with the Plan's terms or provide any documentation regarding such a decision to John's counsel.

John is entitled to all benefits due him under the Plan, plus attorney fees, costs, and interest. In addition, because John has been unlawfully discriminated against by the Plan and/or its Reviewing Office, Quirk, he is entitled to restitution of employee benefits, any and all back pay, and other remedial relief. Finally, John seeks compensation for coercive and fraudulent conduct on the part of the Plan to intimidate him and otherwise interfere with his protected rights pursuant to the terms of the Plan, and for all damages associated with the Plan's refusal to provide required documentation regarding its actions.

**PARTIES**

1. John E. Quirk is an individual residing in Hampden, Maine.

2. The Plan is an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), as amended. A copy of the Plan is attached hereto

as **Exhibit A.**

3.  Village Car Company, Inc. is a duly organized corporation with a usual place of business in Bangor, Maine, amongst other locations through the State of Maine.

## JURISDICTION AND VENUE

4.  The issues raised in this action arise under ERISA, 29 U.S.C. § 1001 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(E)(1) and (f).

5.  Venue is appropriate in this court pursuant to 28 U.S.C. § 1391, 29 U.S.C. § 1132(e)(2).

## FACTUAL ALLEGATIONS

6.  John E. Quirk is the founder and former president of the highly successful Village Car Company, Inc., and its related entities. Prior to his retirement, John was involved in all aspects of the Quirk automobile dealerships and is responsible for building the business from the ground up in 1973.

7.  On or about January 1, 2005, John entered into a Cross Purchase Agreement to sell his interests in various Quirk entities, including Village Car Company, Inc., to his five sons, John J. Quirk, Robert S. Quirk, James A. Quirk, Thomas C. Quirk, and David M. Quirk (collectively "the Buyers").

8.  As part of the consideration for the purchase of John's interest, the Buyers became liable on a certain Promissory Note ("the Note"), in which 140 monthly

payments were to be made to John totaling a principal amount of $747,687.80 with interest thereon.

9. In addition, at the closing for the sale of John's interest, John entered into an Employment and Deferred Compensation Agreement with Defendant, Village Car Company, Inc.

10. The Plan includes, *inter alia*, that upon the satisfaction of the Note in full, the Plan will begin to pay to John 20 quarterly payments of $83,250.00, payable on January 15, April 15, June 15, and September 15, and totaling $1,665,000.00.

11. In September of 2018, the Plan, by and through Quirk as its agent, intentionally and maliciously reduced John's payments by more than 50% of the gross amount due John. This reduction occurred after Quirk made verbal threats to John at John's home.

12. Upon information and belief the Plan reduced John's payments because Quirk, who acts as an agent of the Plan and is the Reviewing Officer for claims made to the Plan, was unhappy with how John chooses to spend his funds and sought to take advantage of the termination upon death clause by limiting payments made to John in this time of his advanced age.

13. In addition, the Plan, by and through Quirk, attempted to coerce and intimidate John into accepting reduced payments by holding a series of meetings with John in which the Plan made unfounded accusations that John had violated some type of "gentleman's agreement" and demanded payment from John to the Plan of large sums of money.

14. The attempts to coerce and intimidate John by the Plan caused him severe emotional distress, to the degree that he would be physically ill following such interactions with the Plan and its agents and representatives.

15. On October 15, 2018, John sent certified correspondence to the Plan through his counsel demanding restoration of his benefits, and requesting copies of any documents upon which the Plan may rely in changing the terms of John's benefit.

16. At no time did the Plan provide any written explanation for the Plan's decision to unilaterally reduce John's payments.

17. Over the course of the following ten weeks, the Plan withheld from John the gross amount of $45,719.28, with no written explanation from the Plan, contrary to the express terms of the Plan related to written denials of benefits.

18. On November 26, 2018, John sent additional certified correspondence to the Plan demanding immediate reimbursement for the sums wrongfully withheld, but also notifying the Plan that he was requesting a further review by the Plan and a "complete copy of all materials relevant to his claim in the possession of the Plan."

19. John has never received any written materials from the Plan explaining the denial of his benefits.

20. The Plan eventually, and after John incurred significant legal expense, provided John with the sum of $45,719.28, constituting an amount that he had been denied for over two months.

21. Nonetheless, the Plan has refused to adhere to the quarterly payment schedule outlined in the Plan, despite John's repeated written requests to be paid quarterly.

22. Instead, the Plan insists that John receive smaller, weekly, payments such that he is denied the full quarterly payment for months each quarter. Upon information and belief, the Plan is doing so in bad faith and to manipulate and/or take advantage of the termination upon death language contained in the Plan.

23. To date, John is not receiving his benefits as proscribed by the Plan, and has never received any written denial of benefits from the Plan, or any claims paperwork relating to why his funds were wrongfully withheld, and continue to be wrongfully withheld by the Plan.

## COUNT I
## Denial of Benefits

24. John restates and incorporates by reference herein the allegations contained in the preceding paragraphs.

25. The Plan is an employee welfare benefit plan governed by the provisions of ERISA, 29 U.S.C. § 1001 *et seq*.

26. John is a participant under the Plan as defined in 29 U.S.C. § 1002(7).

27. Quirk is the Reviewing Officer for the Plan, which is administered by Defendant, Village Car Company, Inc.

28. The Plan wrongfully denied John his deferred compensation for 10 weeks, with no justification and in bad faith. The Plan continues to refuse to adhere to the payment schedule of quarterly payments to John and instead remits small weekly amounts to John in contravention to the terms of the Plan.

29. By virtue of the acts and practices described herein, Defendant wrongfully denied John, and continues to deny John, his benefits to which he is entitled under the terms of the Plan.

30. John is entitled to enforce his rights and recover benefits due him under the Plan because he is eligible to participant in the Plan, and Defendant has denied him benefits pursuant to the Plan.

31. As a direct and proximate result of Defendant's wrongful denial of benefits, Plaintiff has suffered substantial damages, attorney fees and other costs, and is entitled his benefits under the Plan and such other remedial or other relief against Defendant as this Court deems appropriate provided by 29 U.S.C. § 1132(a)(1)(B).

## COUNT II
### Interference with Protected Rights

32. John restates and incorporates by reference herein the allegations contained in the preceding paragraphs.

33. The Plan is an employee welfare benefit plan governed by the provisions of ERISA, 29 U.S.C. § 1002(7).

34. Village Car Company, Inc. is the Plan Administrator of the Plan.

35. Defendant, by virtue of the acts and practices described herein, including but not limited to coercive interference, has discriminated against John for the purpose of interfering with his attainment of a right to which he would otherwise have been entitled under the Plan in violation of 29 U.S.C. § 1140.

36. As a direct and proximate result of Defendant's interference with John's protected rights, John has suffered substantial damages, including attorney fees and other costs, and is entitled to an award of monetary damages, including restitution of employee benefits, applicable fines, and any other relief this Court deems just and appropriate.

## COUNT III
### Refusal to Supply Requested Information

37. John restates and incorporates by reference herein the allegations contained in the preceding paragraphs.

38. John has formally and properly demanded documentation from the Defendant as permitted by the terms of the Plan itself and 29 U.S.C. § 1132(C)(1)(B).

39. Defendant has failed and/or refused to supply John with documentation, access to which he has statutory access.

40. Defendant has withheld such documentation in bad faith.

41. Pursuant to 29 U.S.C. § 1132(C)(1)(B), this Court has the discretion to

assess a daily fine against the Defendant for its failure to supple John with the requested information relevant to the denial of his benefits.

42. As a direct and proximate result of Defendant's interference with John's protected rights, John has suffered substantial damages, including attorney fees and other costs, and is entitled to an award of monetary damages, including restitution of employee benefits, and any other relief this Court deems just and appropriate.

**WHEREFORE**, Plaintiff, John E. Quirk, requests pursuant to 29 U.S.C. § 1132(a)(3) that:

(A) This Court enter judgment declaring that Plaintiff is entitled to benefits under the Plan;

(B) This Court enter judgment for Plaintiff against Defendant on County I and Order Defendant to provide Plaintiff with the benefits owed to him under the Plan including but not limited to quarterly payments owed to him, and interest on unpaid benefits wrongfully denied Plaintiff;

(C) This Court enter judgment for Plaintiff against Defendant on County II, and award Plaintiff his damages including but not limited to restitution of employee benefits, and other remedial or other relief as this Court deems appropriate;

(D) This Court enter judgment for Plaintiff against Defendant on County III, and award Plaintiff damages, including any daily fines applicable, and other remedial or other relief as this Court deems just and proper;

(E) This Court enter judgment in favor of Plaintiff and against Defendant for Plaintiff's reasonable attorney fees and costs of bringing this action; and

(F) This court award such further relief as the Court deems just and appropriate.

Dated: May 13, 2019         /s/ Christopher K. MacLean, Esq.
                            Christopher K. MacLean, Esq.
                            Attorney for Plaintiff
                            CAMDEN LAW, LLP
                            20 Mechanic Street
                            Camden, Maine  04843
                            (207) 236-8836
                            chris@camdenlaw.com
                            Maine Bar Number 8350


Dated: May 13, 2019         /s/ Sarah Irving Gilbert, Esq.
                            Sarah Irving Gilbert, Esq.
                            Attorney for Plaintiff
                            Camden Law LLP
                            20 Mechanic Street
                            Camden, ME 04843
                            (207) 236-8836
                            Maine Bar No. 4576
                            gilbert@camdenlaw.com